RECEIVED
MAR - 9 2020
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **BERNADETTE DICKERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | 2:20-CV-163 |
| vs. | ) | |
| | ) | |
| **KOCH FOODS, LLC and KOCH** | ) | **DEMAND FOR JURY TRIAL** |
| **FOODS OF ALABAMA, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff Bernadette Dickerson states the following her Complaint against Defendants Koch Foods, LLC and Koch Foods of Alabama, LLC.

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, Federal Question Jurisdiction. Claims are brought herein pursuant to Title VII of the civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (hereinafter Title VII).

2. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because this is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under 28 U.S.C. §§ 1331, 1343(4), and the act of Congress known as Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission, within 180 days of the last discriminatory act. Plaintiff has timely filed this claim within ninety (90) days of receipt of her right to sue letter.

## II. PARTIES

4. Bernadette Dickerson is over the age of nineteen (19) years, and a resident of Montgomery County, Alabama.

5. Koch Foods of Alabama, LLC, is an Alabama Limited Liability Company that operates a poultry processing plant in Montgomery, Alabama.

6. Alternatively, Koch Foods, LLC, a Limited Liability Company with its principal place of business in Tennessee, owns and operates the poultry processing plant at which Ms. Dickerson was employed. Or, alternatively, Koch Foods, LLC, and Koch Foods of Alabama, LLC, jointly operate the poultry processing plan where Ms. Dickerson was employed.

7. Koch Foods of Alabama, LLC, and Koch Foods, LLC, are collectively, jointly, and severally referred to herein as "Koch Foods."

## III. FACTS

8.  Ms. Dickerson began working at Koch Foods as a grader in April of 2018. She was transferred to the de-bone plant in May of 2019.

9.  Ms. Dickerson was promoted to the position of QA Technician when she was moved to the de-bone plant.

10. From the beginning, Ms. Dickerson was sexually harassed by her supervisor, Eula Tarver. Ms. Tarver rubbed her breasts against Ms. Dickerson on more than one occasion, and would make lewd comments to her. Ms. Dickerson was not the only Koch Foods employee that Ms. Tarver harassed in this fashion.

11. Ms. Dickerson confided in her co-worker, Crystal Jones that these advances were unwelcome. Ms. Jones, told Ms. Tarver what she had said. Ms. Jones told Ms. Dickerson that Ms. Tarver sexually pursued workers under her, and that she had a sexual relationship with several people in her department. Moreover sexual language and inappropriate touching occurred several times a week in Ms. Dickerson's presence.

12. Ms. Tarver stopped sexually touching Ms. Dickerson, but instead began a process of making life difficult for Ms. Dickerson at work in an attempt to make her quit. For example, Ms. Tarver made up bogus claims about Ms. Dickerson to the Koch Foods Human Resources Department in an attempt to have Ms. Dickerson "written up" and disciplined. She even went so far as to have Ms. Dickerson "written

up" by the Human Resources department for "a threatening outburst." Ms. Dickerson, of course, had never inappropriately acted out at work.

13.     Ms. Dickerson, because she had complained of sexual harassment to her supervisor, who was in a relationship with Ms. Jones, who Ms. Dickerson had originally confided in, was subject to harassment by co-workers, including epithets, sexually suggestive remarks, threats, uncooperative co-workers, and veiled threats.

14.     Worse than the harassment by her co-workers, Ms. Dickerson was subject to the same cadre of co-workers telling Koch Human Resources employees Shenealya Maxwell and Chiquita Patterson, that Ms. Dickerson was being disruptive, threatening, and not doing her job, all in an attempt to make her quit, or to get fired.

15.     Ms. Dickerson even received a written Employee Warning Report. This report was presented to her by Shenealya Maxwell. Ms. Dickerson told her that she would not sign the report because none of it was true.

16.     Other Koch employees, at the urging of Crystal Brown and Eula Tarver, continued to harass Ms. Dickerson because she had made a complaint of sexual harassment. These were employees that Ms. Tarver was in a sexual relationship with. Moreover, Mr. Brown and Ms. Tarver continued to go to Ms. Maxwell with fabrications about Ms. Dickerson at work. This occurred many times between August and early November of 2019.

17. These fabrications hurt Ms. Dickerson in that she was denied a promotion to the position of Customer Service Specialist. Ms. Dickerson had applied for the position, but did not get it. When she asked Ms. Maxwell why she did not get the job, she was told that she was not considered because she had been "written up," by Ms. Tarver and Ms. Maxwell.

18. Ms. Dickerson was called into Ms. Maxwell's office several times due to bogus complaints by Ms. Jones and Ms. Tarver. Ms. Maxwell said that she would investigate the complaints, but never did any real sort of investigation.

19. Finally, after Chrystal Jones accused Ms. Dickerson of misuse of a cart used to transport items at the plant, Ms. Maxwell reviewed a video tape of the incident, and saw clearly that Ms. Dickerson had done nothing wrong, and that Ms. Brown had fabricated the story. As a result, Ms. Jones was transferred.

20. The transfer of Ms. Jones intensified Ms. Dickerson's mistreatment.

21. In late August of 2019, Ms. Dickerson was sexually harassed by another Koch Foods employee. Tyrone Brown, one of her co-workers, would continually make sexual remarks to Ms. Dickerson, asking for sex, and even saying that he would pay Ms. Dickerson for sexual acts. Ms. Dickerson tried to ignore Mr. Brown, and then told him respectfully that she was not interested in any sort of sexual relationship with him. Before the sexual harassment by Mr. Brown, Ms. Dickerson would occasionally give Mr. Brown a ride home from work. After Mr. Brown's

sexual comments increased in frequency and in their graphic quality, she stopped that offering to give Mr. Brown a ride home.

22. Ms. Dickerson complained to her Human Resources contact, Ms. Maxwell, about this sexual harassment. Nothing was done.

23. Mr. Brown found out about Ms. Dickerson's complaint, and he intensified his attacks on her along with the rest of the employees in league with Ms. Tarver, calling her vulgar names and physically pushing with his work cart, trying to push her down. Ms. Maxwell was even shown a video of at least one of these incidents, but still nothing was done.

24. Ms. Dickerson continued to complain to Human Resources that she was being sexually harassed, and that the other workers were mistreating her verbally and physically because she had gone to management with her complaints, but nothing was done.

25. Mr. Brown was terminated in late September, but not because of his sexual harassment and retaliation against Ms. Dickerson. He was terminated because he left a thermometer in a chicken carcass.

26. The mistreatment and harassment by other workers continued. In addition to the direct harassment by other workers, they would continually "report" her to Ms. Maxwell for non-existent "offenses." They made up stories to try to get Ms. Dickerson fired.

27. Ms. Dickerson had a meeting with Ms. Maxwell and with a more senior Human Resources person, Nikki Bibb, to try to get some relief. None of it worked, and the harassment continued, and Ms. Dickerson's complaints about it continued.

28. On October 24, 2019, Ms. Dickerson had another meeting with Eula Tarver, her supervisor, about an "issue" fabricated by others to harass her. In the course of this meeting, Ms. Dickerson again brought up the sexual harassment that had continued, and the fact that her co-workers were continually making her life difficult in retaliation for her complaints about sexual harassment.

29. Again, nothing occurred as the result of this meeting. The harassment continued.

30. Finally, in early November, 2019, Ms. Maxwell, along with Nikki Bibb and Michael Gadsberry did do something about the situation. They suspended Ms. Dickerson.

31. When asked by Ms. Dickerson why she was being suspended, Ms. Maxwell specifically told Ms. Dickerson that the reason they suspended her was because her complaints about sexual harassment had caused all sorts of trouble with the workers there. Then, when Ms. Dickerson asked when she could come back to work, she was terminated on or about November 18, 2019. In a nutshell, the way Koch Foods dealt with the problem of sexual harassment was to fire the victim who had the temerity to report the harassment.

## COUNT I
(Sexual Harassment and Hostile Work Environment)

32. Plaintiff incorporates by reference paragraphs 1-31 above as if set forth fully herein.

33. In taking the above-described actions, Defendant intentionally discriminated against Plaintiff on the basis of her gender, in violation of Title VII. Specifically Defendant condones and tolerates sexual harassment. Defendant's actions created, nurtured, tolerated, condoned, or otherwise permitted a sexually hostile environment in violation of Title VII.

34. The actions of Defendant, through its agents Shenealya Maxwell, Eula Tarver, Nikki Bibb, Michael Gadsberry, and Bob Elrod were taken with malice, or reckless indifference to the federally protected rights of Plaintiff.

35. Plaintiff has been discriminated and retaliated against by Defendant in the terms, conditions, and privileges of employment through the creation of and tolerance of a sexually charged and hostile work environment in violation of Title VII.

36. As stated above, supervision and/or management at Koch Foods participated in, were aware of, and encouraged and condoned the sexually hostile work environment.

37. Plaintiff was directly affected by the sexually discriminatory and harassing practices described in the Complaint.

38. Plaintiff made several good faith efforts to oppose the sexual and other harassment, which was occasioned on her because of her reporting of several incidents of harassment, and was retaliated against for those good faith efforts by more harassment, bogus complaints against her, and her ultimate termination. This was retaliation against Ms. Dickerson due to her protected activities of opposing sexual discrimination and harassment.

39. The unlawful actions of Defendant, as set forth above, constitute a practice, pattern, custom, or policy of Defendant for allowing acts of sexual harassment, sexual discrimination and/or retaliation in violation of employees' federally protected rights.

40. The conduct of Ms. Tarver, Mr. Brown, Ms. Jones, and others in league with them in the workplace, allowed to continue by Defendant, was so severe and pervasive as to create a sexually hostile work environment for Plaintiff.

41. Defendant knew, or should have known, about the sexually hostile environment. Even with this knowledge, Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the sexual harassment and discrimination and retaliation aimed at Plaintiff.

42. The actions of Defendant, as set forth herein, violate Title VII.

43. As a result of the actions of Defendant in violation of Title VII, Plaintiff has, and continues to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering. In addition, Plaintiff has suffered economic loss in that she has been terminated for her reporting of the sexual harassment in this case.

44. Plaintiff has satisfied all administrative prerequisites to bringing her Title VII claims:

   a. On or about November 6, 2019, Plaintiff timely filed a Charge of Discrimination with the Equal Opportunity Commission, Charge No. 420-2020-03644, against Defendant, which was filed within the 180 days of the commission of the unlawful employment practices alleged herein.

   b. On or about December 3, 2019, Plaintiff filed another timely Charge of Discrimination, Charge No. 420-2020-00536, with the Equal Employment Opportunity Commission against Defendant, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

   c. On or about December 11, 2019, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue letter on her EEOC Charge, number 420-2019-03644.

   d. On or about January 31, 2020, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue letter on her EEOC Charge, number 420-2020-00536.

   e. This Complaint has been filed within 90 days of the receipt of notification of Right to Sue from the EEOC as to both charges.

   f. Defendant's conduct violates Title VII, as amended.

## **COUNT II**
(Retaliation)

45. Plaintiff incorporates by reference, as if fully set forth herein, paragraphs 1-44 above.

46. As stated above, Plaintiff has been intentionally discriminated against and retaliated against in violation of Title VII and 42 U.S.C. § 1981 by Defendant for protesting illegal discrimination and sexual and other harassment.

47. In taking the above-described actions, Defendant intentionally discriminated against and retaliated against the Plaintiff for protesting illegal discrimination. Employees who have not opposed discrimination/sexual harassment have not been treated in a similar manner as Plaintiff. The actions of Defendant were taken with malice and reckless indifference to the federally protected rights of Plaintiff.

48. Plaintiff complained about the retaliatory actions of Defendant, and the original discriminatory sexual harassment, but Defendant failed to take corrective action to prevent the retaliation. Defendant's actions were in violation of Title VII.

49. As a proximate consequence of Defendant's actions, and the violation of Title VII, the Plaintiff has suffered, and will continue to suffer, lost income, as she was ultimately terminated, Ms. Dickerson has suffered mental anguish and emotional distress, and other injuries and damages.

50.     The retaliation against Plaintiff was ongoing and of a continuous nature until she was ultimately terminated.

51.     Plaintiff has satisfied all administrative prerequisites to bring this claim pursuant to Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assumes jurisdiction of this action and order the following relief:

a.  Issue a declaratory judgment that the employment policies and practices, working conditions and customs of the Defendant are in violation of the rights of Plaintiff, as secured under Title VII of the Civil Rights Act of 1964, and the 1991 amendments thereto, as well as 42 U.S.C. § 1881.

b.  Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at defendant's request from continuing to violate Title VII, as amended and 42 U.S.C. § 1981.

c.  Enter an order requiring Defendant to reinstate Plaintiff to any and all positions from which she was retaliatory and discriminatorily discharged.

d.  Grant Plaintiff the appropriate amount of backpay, interest, benefits, damages and reinstatement into the job position in which she was discriminatorily discharged, or in the alternative, front pay.

  e. Grant Plaintiff an award of punitive and compensatory damages, including but not limited to, an award for mental anguish and emotional distress.

  f. Award the Plaintiff the costs and expenses, including an award of a reasonable attorney's fee.

  g. Other such relief as may be appropriate.

## JURY DEMAND

Plaintiff reserves her right to and hereby requests a trial by jury.

Respectfully submitted,

/s/ Brian M. Clark
Brian Clark
Attorney for Plaintiff

**OF COUNSEL:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: bclark@wigginschilds.com

/s/ Allan Armstrong
Allan Armstrong
Attorney for Plaintiff

**OF COUNSEL**
ARMSTRONG LAW CENTER, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama 35216
Birmingham, Alabama 35203
Email: armstrong.atty@gmail.com

**SERVE DEFENDANTS AT THE FOLLOWING:**

**Koch Foods, LLC**
**c/o Registered Agent**
**CT Corporation System**
**2 North Jackson Street, Suite 605**
**Montgomery, Alabama 36104**

**Koch Foods of Alabama, LLC**
**c/o Registered Agent**
**CT Corporation System**
**2 North Jackson Street, Suite 605**
**Montgomery, Alabama 36104**